**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Jose H. Peralta, | No. CV-17-01868-PHX-DJH (ESW) |
| Plaintiff, | **ORDER** |
| v. | |
| State of Arizona, et al., | |
| Defendants. | |

Plaintiff Jose H. Peralta brought this civil action through counsel against the State of Arizona ("the State") and two Arizona Department of Public Safety (DPS) employees: Director Colonel Frank Milstead and Trooper Tracy Collins. (Doc. 20.) Before the Court is Defendants' Motion for Summary Judgment. (Doc. 57.) The Court will grant the Motion in part and deny it in part.

**I.    Background**

Peralta's claims stem from his July 2, 2016 arrest for suspicion of driving under the influence. (Doc. 20 ¶ 20.) Plaintiff alleged that he was brought to a DPS Station in Phoenix and placed in a holding cell with his hands cuffed in front of him. (*Id.* ¶ 21.) Peralta was seated on a bench in the holding cell when he collapsed onto the floor. (*Id.* ¶ 22.) Collins responded by grabbing Peralta, rolling him onto his back, forcefully straightening his body, and dragging him down the hallway. (*Id.*) Peralta sustained serious injuries, including paralysis from the neck down, and he was transported to the hospital where he underwent two neck surgeries. (*Id.* ¶ 23.)

In his First Amended Complaint, Peralta asserted the following claims:

· Count One—state-law negligence claims against the State, Milstead, and Collins;[1]

· Count Two—Fourth and Fourteenth Amendment claims against Collins and Milstead in their individual capacities;

· Count Three—a 42 U.S.C. § 1983 claim against Milstead in his official capacity for unconstitutional policies, customs, and failure to train;

· Count Four—Fourth and Fourteenth Amendment claims against the State and Milstead for supervisory responsibility; and

· Count Five—claims against the State for violations of Article 2, sections 2, 4, and 15 of the Arizona Constitution.  (*Id.* ¶¶ 25–68.)

On October 12, 2018, Defendants filed a Motion for Summary Judgment, which argues that (1) the Eleventh Amendment bars the claims against the State; (2) Milstead cannot be sued in his official capacity; (3) Peralta fails to state a claim against Milstead in his individual capacity; (4) the negligence claims against Milstead and Collins are barred by Arizona's notice of claim statute; (5) Milstead and Collins are entitled to qualified immunity as to the state law negligence claims; (6) Peralta fails to support his negligence

---

[1] In the First Amended Complaint, Peralta indicated in the caption under Count One that the negligence claim was against the State of Arizona; it did not list Milstead or Collins.  (Doc. 20 at 6.)  Peralta states that this was a typographical error and that Count One sets forth negligence claims against all three Defendants as indicated in the Count One factual allegations, which expressly allege facts against "*Defendants*."  (Doc. 60 at 5; Doc. 20 ¶¶ 26–29.)  Defendants acknowledged as much in their Motion for Summary Judgment; "it becomes clear in reading the [First Amended Complaint] that the Counts' allegations pertain to additional parties than just the one(s) identified in the caption or count title."  (Doc. 57 at 3.)  And Defendants present multiple defenses to negligence claims against Milstead and Collins.  (*Id.* at 8, 10-12.)

A caption or label is not part of the claim; a court looks at the allegations to determine the nature of a plaintiff's claim.  *See Valley Forge Christian Coll. v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 477 (1982) (the court looks through the form of the complaint "to the substance of [the] complaint" to determine the claim); *Brooks v. Dist. of Columbia*, No. 18-cv-0732 CRC, 2019 WL 1317558, at *2 (D.C. March 22, 2019) ("the Court is not bound by the specific labels used in the complaint"); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (to determine whether a complaint states claim, the court looks at whether the plaintiff's allegations have sufficient factual content that allows the inference that the defendant is liable).  Based on the factual allegations in the First Amended Complaint, Count One asserts negligence claims against all Defendants.

claims against any Defendant; (7) Peralta fails to establish that Collins acted with deliberate indifference, and (8) punitive damages are not supported.  (Doc. 57.)

## II.     Summary Judgment Standard

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  The movant bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 323.

If the movant fails to carry its initial burden of production, the nonmovant need not produce anything.  *Nissan Fire & Marine Ins. Co.*, *Ltd. v. Fritz Co.*, *Inc.*, 210 F.3d 1099, 1102–03 (9th Cir. 2000).  But if the movant meets its initial responsibility, the burden shifts to the nonmovant to demonstrate the existence of a factual dispute and that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmovant.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 250 (1986); *see Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995).  The nonmovant need not establish a material issue of fact conclusively in its favor, *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968); however, it must "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co.*, *Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal citation omitted); *see* Fed. R. Civ. P. 56(c)(1).

At summary judgment, the judge's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial.  *Anderson*, 477 U.S. at 249.  In its analysis, the court does not make credibility determinations; it must believe the nonmovant's evidence and draw all inferences in the nonmovant's favor.  *Id.* at 255; *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).  The court need

consider only the cited materials, but it may consider any other materials in the record. Fed. R. Civ. P. 56(c)(3).

## III.    Relevant Facts

Where the parties' versions of events differ, the Court takes Peralta's facts as true. *See Anderson*, 477 U.S. at 255.

On July 2, 2016, Peralta was involved in a single motor vehicle incident on the southbound I-17 at the Northern Avenue off ramp in Phoenix. (Doc. 58 ¶ 1.) Defendant Collins responded to the call and arrested Peralta for suspicion of driving under the influence. (*Id.* ¶¶ 2–3.) Collins transported Peralta to the DPS Station in Phoenix; they arrived at the Station at approximately 2:21 a.m. (*Id.* ¶ 3; Doc. 61, Ex. C, Collins Dep. 73:2–9, May 22, 2018.) During his arrest and while at the DPS Station, Peralta appeared drunk and was unsteady on his feet. (Doc. 61 ¶ 20; Doc. 61, Ex. C, Collins Dep. 75:4–7.) At the DPS Station, Collins removed Peralta's handcuffs to allow him to use the restroom. (Doc. 61 ¶ 21.) When Peralta exited the restroom, Collins handcuffed him in the front instead of behind his back because he was cooperative. (*Id.*; Doc. 20 ¶ 21.) After conducting breath intoxication tests, Collins placed Peralta in a holding cell. (Doc. 58 ¶ 4.) At this time, Collins was the only staff member in the DPS Station. (Doc. 61 ¶ 23.) She exited the DPS Station, leaving Peralta with no supervision, while she returned to her patrol vehicle to gather Peralta's belongings. (*Id.* ¶ 24.) Upon her return, she noticed Peralta seated on the holding cell bench facing the cell door with his face in his hands. (*Id.* ¶ 25.) Collins did not go into the cell to physically check on Peralta. (*Id.* ¶ 26.)

While Collins was seated at her desk, she heard a loud slam. (Doc. 58 ¶ 7.) Collins checked on Peralta through the observation window of the cell and saw him on the floor with his buttocks up, his knees bent below him, and his head against the cell door with a pool of blood forming beneath his face. (*Id.* ¶ 8; Doc. 61 ¶ 8.) Collins opened the cell door, which cased Peralta to slide flat in a face down position on the floor. (Doc. 61 ¶ 9.) Collins told Peralta to roll over onto his back. (Doc. 58 ¶ 9.) Collins lifted Peralta up by his hands and pulled him, telling him "let's go," and he told her that he saw blood and

asked what happened. (Doc. 61, Ex. B, Peralta Dep. 37:15–21, 39:10–14, May 14, 2018.) Collins ignored him, pulled him, and told him again "let's go." (*Id.* 37:22–24, 39:15–16.) At that point, Peralta told Collins "hey, I can't feel my hands. I can't feel my body," and then he blacked out or fainted. (*Id.* 39:16–18.) Collins then used Peralta's belt and his belt loops to roll him over; she did not support his neck while doing so. (Doc. 61 ¶ 11.) Collins grabbed the back of Peralta's shirt by the collar, pulled him out into the hallway, and dragged him down the hallway approximately 12 feet and around a corner. (*Id.* ¶ 34.) Collins then propped Peralta up on her leg. (*Id.* ¶ 36.) Collins called for medical assistance at approximately 3:44 a.m. (Doc. 61, Ex. C, Collins Dep. 93:18–24.)

The Phoenix Fire Department arrived and transported Peralta to the Maricopa Medical Center, where he underwent two neck surgeries due to a cervical spinal cord injury. (Doc. 61 ¶ 42.) Peralta was hospitalized for several days and then moved to an inpatient rehabilitation facility for six weeks. (Doc. 61, Peralta Dep. 45:17–46:21.) When he entered the facility, Peralta could not move his hands or legs, but he was able to move his arms and legs a little when he was released, at which time he could use a walker. (*Id.* 47:8–16.) He was moved to a second rehabilitation facility for an unknown amount of time. (*Id.* 47:20–10.) Peralta required a feeding tube following his surgeries until approximately May 1, 2018, when he started to feed himself orally. (*Id.* 48:3– 21.)

## IV. State of Arizona

### A. Eleventh Amendment

"The Eleventh Amendment bars suits for money damages in federal court against a state, its agencies, and state officials acting in their official capacities. *Aholelei v. Dep't of Public Safety*, 488 F.3d 1144, 1147 (9th Cir. 2007). But Eleventh Amendment immunity is an affirmative defense that can be waived. *Id.*; *see Wisconsin Dep't of Corrs. v. Schacht*, 524 U.S. 381, 389 (1998) (the State can waive the defense of Eleventh Amendment immunity); *Hill v. Blind Indus. and Servs. of Maryland*, 179 F.3d 754, 758 (9th Cir. 1999) ("[a]lthough the Eleventh Amendment defense arises from the Constitution, even constitutional rights can be waived if not timely asserted"). The affirmative defense of

Eleventh Amendment immunity "must be raised early in the proceedings to provide fair warning to the plaintiff." *Aholelei*, 488 F.3d at 1147 (internal quotation omitted). Eleventh Amendment immunity is waived if a state "unequivocally evidences its intention to subject itself to the jurisdiction of the federal court." *Hill*, 179 F.3d at 758. Express waiver is not required; a state may waive its Eleventh Amendment immunity through "conduct that is incompatible with an intent to preserve that immunity." *Id.*

For example, in *Hill*, the Ninth Circuit found that a Maryland state agency waived its Eleventh Amendment immunity when it did not raise the defense until the opening day of trial after it had filed two motions to dismiss and an answer that did not assert the defense; consented to a magistrate trying the case; conducted discovery and moved to compel discovery; and filed pretrial materials. *Id.* at 756. In *In re Bliemeister*, the appellate court determined that the state waived Eleventh Amendment immunity after it filed an answer and a summary judgment motion, and attended an oral hearing and argued the merits, all without raising the immunity defense. 296 F.3d 858, 862 (9th Cir. 2002). In another case, the Ninth Circuit found that even where the defendant—a California community college district—asserted Eleventh Amendment immunity in its answer, because the defendant then litigated the suit on the merits; participated in discovery; and filed a motion to dismiss and a motion for summary judgment without raising the immunity defense, the defendant had chosen to defend the merits of the case in federal court and therefore waived the Eleventh Amendment immunity defense. *Johnson v. Rancho Santiago Comm. College Dist.*, 623 F.3d 1011, 1022 (9th Cir. 2010).

Waiver of Eleventh Amendment immunity has been recognized in § 1983 civil rights cases. *See Duffin v. Idaho State Univ.*, No. 4:16-cv-00209-BLW, 2017 WL 6543873, at *2–3 (D. Idaho Dec. 21, 2017). In *Duffin*, the plaintiff, a former tennis player at Idaho State University (ISU), claimed that he was harassed and disparaged by two coaches because of his religion, and he ultimately quit the tennis team. *Id.*, at *1. He then filed a complaint in federal court alleging that ISU and the coaches violated his First Amendment free-exercise rights. *Id.* The district court found that although ISU was entitled to Eleventh

Amendment immunity absent consent, it waived its Eleventh Amendment immunity because it litigated the case and waited to assert the defense until after the plaintiff's claims became barred in state court by the statute of limitations; "[t]he Court can only conclude that this was a tactical attempt to deny [the plaintiff] his day in Court" and "[t]he Court will not allow Eleventh Amendment immunity to be used that way." *Id.*, at *2–3.

## B. Analysis

Peralta argues that the State admitted that this Court had jurisdiction over Peralta's claims, engaged in extensive proceedings throughout the discovery period, and allowed Peralta to conduct depositions, all the while without seeking dismissal on sovereign immunity grounds. (Doc. 60 at 4–5.) Peralta suggests that the State made a tactical decision to delay asserting the sovereign immunity defense, thereby undermining the integrity of the judicial system. (*Id.* at 5.) He therefore contends that the State waived the defense of Eleventh Amendment immunity. (*Id.*) The State contends there was no such waiver. (Doc. 62 at 3.) It asserts that it did not invoke federal jurisdiction; rather, Peralta filed this lawsuit in federal court, and the State notes that it explicitly pleaded the affirmative defense of sovereign immunity in its Answer. (*Id.* at 3–4.)

As the State asserts, it set forth the affirmative defense of sovereign absolute immunity in its Answer, which was filed on December 4, 2017, well before the statute of limitations deadline governing Peralta's claim. (Doc. 24 at 7 ¶ 3.) In fact, the sovereign immunity defense was first asserted in the State's answer to Peralta's original complaint. (Doc. 11 at 6 ¶ 3.) As such, this case is not analogous to *Duffin*, where Eleventh Amendment immunity was not asserted until after the statute of limitations had run, thereby supporting that the late assertion was a tactical decision to preclude the plaintiff from bringing his claim. *See* 2017 WL 6543873, at *2–3. The State then raised the Eleventh Amendment immunity defense in the pending Motion for Summary Judgment, which is the first dispositive motion in this action. (Doc. 57.) Consequently, this case is similar to those where the Ninth Circuit has concluded there was no waiver of Eleventh Amendment immunity. *See e.g.*, *Gamboa v. Rubin*, 80 F.3d 1338, 1350 (9th Cir. 1996), (finding that

Hawaii had not waived its Eleventh Amendment immunity where the state specifically asserted that defense in its answer), *vacated on other grounds sub nom. Gamboa v. Chandler*, 101 F.3d 90 (9th Cir. 1996) (en banc); *Ashker v. Cal. Dep't of Corrs.*, 112 F.3d 392, 393–04 (9th Cir. 1997) (finding no Eleventh Amendment waiver where the state asserted sovereign immunity defense in its answer and pretrial statement).

In short, the State provided fair warning to Peralta, and it did not waive the defense of Eleventh Amendment immunity. The claim in Count One against the State will therefore be dismissed without prejudice. *See Freeman v. Oakland Unified Sch. Dist.*, 179 F.3d 846, 847 (9th Cir. 1999) (dismissals on Eleventh Amendment grounds "should be . . . without prejudice so that a plaintiff may reassert his claims in a competent court") (quotation omitted). Count Five, which asserts state constitutional claims against the State, will also be dismissed on this basis. And the claims set forth against the State in Count Four will be dismissed as well.

## V.     Official Capacity Claims Against Milstead

A state official may not be sued under § 1983 in his official capacity for damages. *See Hafer v. Melo*, 502 U.S. 21, 27 (1991) ("[s]tate officers sued for damages in their official capacity are not 'persons' for purposes of [§ 1983] because they assume the identity of the government that employs them"). But a state official may be sued under § 1983 for prospective injunctive relief, in which case a state official sued in his official capacity is a person within the meaning of § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 n.10 (1989); *Doe v. Lawrence Livermore Nat'l Lab.*, 131 F.3d 836, 839 (9th Cir. 1997.)

In Count Two, Peralta alleges a § 1983 claim against Milstead for, in part, acting in his official capacity. (Doc. 20 ¶ 33.) In Count Three, Peralta alleges a § 1983 claim against Milstead in his official capacity based on unconstitutional policies, customs, and a failure to train. (*Id.* ¶¶ 48–59.) *See Monell v. New York City Dep't of Soc. Svcs.*, 436 U.S. 658, 694 (1978). But Peralta does not sue for injunctive relief; rather, he sues for damages. (*See* Doc. 20.) Accordingly, the official capacity claims against Milstead are not cognizable, and the official capacity claim within Count Two will be dismissed, as will Count Three.

In Count Four, Peralta asserts a claim against Milstead entitled "Supervisor Responsibility," and he alleges violations of his Fourth and Fourteenth Amendment rights under § 1983 based on Milstead's deliberately indifferent actions, his failure to act despite knowledge of detainee safety deficiencies, and his policies, procedures, and customs that resulted in civil rights violations. (Doc. 20 ¶¶ 60-64.) These allegations conflate individual capacity liability and official capacity liability. To the extent Peralta alleges that Milstead is liable under § 1983 in his individual capacity for his own actions and as a supervisor, that allegation is addressed below in the discussion of Count Two. To the extent Peralta alleges that Milstead is liable in his official capacity for polices, practices, and customs that caused injuries to Peralta, such a claim for damages is not cognizable. Count Four will therefore be dismissed.

## VI. Individual Capacity Claims Against Milstead and Collins

The remaining claims are the individual capacity claims set forth against Milstead and Collins in Count One, which alleges state law negligence claims, and in Count Two, which alleges constitutional violations under § 1983. (Doc. 20.)

### A. Count One—Negligence

#### 1. Notice of Claim Requirement

Defendants contend that Peralta failed to comply with the Notice of Claim statute because, although he served a notice of claim on the State, he failed to personally serve a notice of claim on either Milstead or Collins as required by the statute. (Doc. 57 at 8–11.)

Arizona's notice of claim statute requires a claim to be filed within 180 days after the cause of action accrues. Ariz. Rev. Stat. § 12-821.01(A). "Both Arizona courts and courts in this District have squarely held that a person asserting claims against both a public entity and a public employee must serve a separate notice of claim on the employee." *Fernandez v. City of Phoenix*, No. CV 11-02001-PHX-FJM, 2012 WL 1985682, at *1 (D. Ariz. June 4, 2012) (citing *McGrath v. Scott*, 250 F. Supp. 2d 1218, 1236 (D. Ariz. 2003); *Crum v. Superior Court*, 922 P.2d 316, 317 (Ariz. App. 1996).

Peralta does not dispute that he did not personally serve a notice of claim on Milstead or Collins. (*See* Doc. 60.) But Peralta contends that Defendants failed to raise the notice of claim issue in a motion to dismiss and are thus precluded from relying on that argument at summary judgment. (*Id.* at 6 n.6.) In their Reply, Defendants did not respond to Peralta's untimeliness argument. (*See* Doc. 62.)

"An assertion that a plaintiff did not comply with the notice of claim statute is an affirmative defense subject to waiver[,]" and "[a] defendant that has raised the defense in its answer may waive the defense by subsequent conduct." *Ponce v. Parker Fire Dist.*, 322 P.3d 197, 200 (Ariz. Ct. App. 2014) (citing *City of Phoenix v. Fields*, 201 P.3d 529, 535 (2009)). The defense is waived when the defendant actively litigates issues unrelated to the notice of claim defense. *Id.*; *see Jones v. Cochise Cnty.*, 187 P.3d 97, 104–05 (Ariz. Ct. App. 2009) (finding waiver when the government entity substantially participates in litigation).

In *Ponce*, the defendant asserted the notice of claim defense in its answer and then, in a summary judgment motion, it argued that the plaintiff filed an untimely notice of claim. 322 P.3d at 199. The plaintiff argued that the defendant "waived its notice of claim defense by participating in the litigation for more than a year before moving for summary judgment on the issue." *Id.* at 200. During that time, the defendant participated in disclosure, discovery, and ten depositions. *Id.* The defendant countered that it did not notice any of the depositions or initiate any discovery requests. *Id.* The Arizona Court of Appeals concluded that the defendant actively litigated the merits of the case and engaged in actions that were unnecessary to a notice of claim defense. *Id.* "Had a prompt motion to dismiss or for summary judgment on the notice of claim been successful, all the resources used to litigate the merits would not have been necessary." *Id.* at 201. The appellate court found that the defendant waived the notice of claim defense by failing to seek prompt judicial resolution of the defense. *Id.*

In *Jones*, the defendant did not raise the notice of claim defense until nearly a year after the complaint was filed and the parties litigated the case, including engaging in

discovery and participating in depositions. 187 P.3d at 103. Notably, the defendant noticed six depositions, and it actively investigated and proactively defended the claim against it by deposing witness and conducting other discovery. *Id.* at 105. The appellate court stated that "this conduct is inconsistent with an intention to assert the notice of claim statute as a defense," and it found that the defendant waived the notice of claim defense. *Id.*

The docket shows that this action was initiated in June 2017 with the filing of the original complaint, and Peralta filed his First Amended Complaint in November 2017. (Docs. 1, 20.) In their Answer to the First Amended Complaint, Defendants asserted that they were entitled to immunity provided under section 12-821.01. (Doc. 24 at 7 ¶ 5.) Thereafter, Defendants participated in discovery, which included, among other things, serving requests for admissions, interrogatories, and production of documents and responding to Peralta's interrogatories and requests for production of documents. (Docs. 30, 36, 39.) Defendants noticed depositions of Jose Peralta, Sr., Jose Peralta, Jr., and Dania Peralta. (Docs. 43–45.) Peralta noticed three depositions: he deposed Defendant Collins, Sergeant Gunnar Hancock, and Sergeant Jeremy Bulgar. (Docs. 47–49.) In June 2018, the parties filed a Joint Notice indicating that "counsel are actively involved in discovery," including recently concluded key depositions, and that, with respect to the status of good faith settlement talks, they anticipated the ability to engage in mediation in September. (Doc. 51.) On October 12, 2018, Defendants filed their Motion for Summary Judgment and asserted the notice of claim defense along with arguments for judgment on the merits. (Doc. 57.)

On this record, Defendants failed to seek prompt judicial resolution of the notice of claim defense. Defendants instead actively engaged in discovery, noticed and participated in depositions, and waited almost two years after the First Amended Complaint was filed before raising the notice of claim argument at summary judgment. Following the holdings in *Ponce* and *Jones*, the Court finds that Milstead and Collins have waived the notice of claim defense.

…

## 2. Sufficiency of Negligence/Gross Negligence Claims

Defendants argue that Peralta has failed to develop evidence to establish a genuine issue of material fact as to their alleged negligence and, therefore, summary judgment is appropriate. (Doc. 57 at 12.)

To establish a claim for negligence under Arizona law, a plaintiff must prove: 1) a duty requiring the defendant to conform to a certain standard of care; 2) a breach by the defendant of that standard; 3) a causal connection between the defendant's breach and the resulting injury; and 4) actual damages. *Gipson v. Kasey*, 150 P.3d 228, 230 (2007) (citation omitted).

To support a gross negligence claim, a plaintiff must additionally show "[g]ross, willful, or wanton conduct." *Noriega v. Town of Miami*, 407 P.3d 92, 98 (Ariz. Ct. App. 2017) (quoting *Armenta v. City of Casa Grande*, 71 P.3d 359, 364 (Ariz. Ct. App. 2003)). "A party is grossly or wantonly negligent if he acts or fails to act when he knows or has reason to know facts which would lead a reasonable person to realize that his conduct not only creates an unreasonable risk of bodily harm to others but also involves a high probability that substantial harm will result." *Walls*, 826 P.2d at 1221. Gross negligence is "more than ordinary inadvertence or inattention, but less perhaps that conscious indifference to the consequences[.]" *Weatherford ex rel. Michael L v. State*, 81 P.3d 320, 326 n.4 (2003) (quotation omitted). Generally, the issue of gross negligence is a question of fact for a jury to determine. *Armenta*, 71 P.3d at 365.

Whether a duty exists is a matter of law for the court to decide, and "[t]he other elements, including breach and causation, are factual issues usually decided by the jury." *Gipson*, 150 P.3d at 230. It is well established that a duty exists when "the relationship of the parties [is] such that the defendant [is] under an obligation to use some care to avoid or prevent injury to the plaintiff." *Markowitz v. Ariz. Parks Bd.*, 706 P.2d 364, 368 (Ariz. 1985) (*superseded by statute on other grounds as recognized in Maher v. United States*, 56 F.3d 1039, 1042 n.4 (9th Cir. 1995)); *Grafitti-Valenzuela ex rel. Grafitti v. City of Phoenix*, P.3d 711, 715 (Ariz. Ct. App. 2007). Arizona has recognized that a duty to protect

exists in certain special relationships such as guardian-ward and jailer-prisoner. *Fedie v. Travelodge Intern., Inc.*, 782 P.2d 739, 741 (Ariz. Ct. App. 1989); *see Markowitz*, 706 P.2d at 368; *see also Minneci v. Pollard*, 132 S. Ct. 617, 624–25 (2012) (noting that California's tort law regarding a jailer's duty of care to protect prisoners from harm "reflects general principles of tort law present, as far as we can tell, in the law of every State"). Whether a duty of care exists is not a factual matter; it is a legal determination made before specific facts in a case are considered. *Gipson*, 150 P.3d at 232. Here, a special relationship of jailer-prisoner existed thereby giving rise to a duty of care.

### a. Collins

Peralta alleges that Collins breached this duty of care by keeping Peralta handcuffed after he was already processed and placed in a jail cell, by failing to check on him when he was in the cell, and by failing to obtain necessary medical care for Peralta in the circumstances. (Doc. 20 ¶¶ 21, 27.) The facts show that, at the DPS Station, Peralta was drunk and unsteady on his feet, and Collins placed him in the holding cell while he was still handcuffed. (Doc. 61 ¶ 20; Doc. 61, Ex. C, Collins Dep. 75:4–7; Doc. 61 ¶ 22.) Peralta was left in the holding cell—unsupervised—for over an hour, and when Collins saw that he was seated with his face in his hands, she did not go into the cell to check on him. (Doc. 61 ¶¶ 24–26.) After Peralta collapsed, Collins grabbed his hands and lifted them up, and he told her he could not feel his hands or his body. (Doc. 61, Ex. B, Peralta Dep. 39:10–23.) Peralta submits Collins' deposition testimony, in which she states that after Peralta was on his stomach on the ground, he told her he could not feel his arms or legs; that she grabbed his belt and rolled him over; that she grabbed him by the shirt collar and dragged him 12 feet down the hallway, which left a blood smear down the hallway; and that she lifted his torso off the ground and propped him up on her leg where he stayed upright. (*Id.*, Ex. C, Collins Dep. 105:17–21, 106:8–10, 108:16–24, 113:6–9, 113:20–23, 116:2–3, 119:9–12, 122:11–14, 122:18–19, 123:5–6, 123:23–25.) Collins confirmed that she took all of these actions before medical personnel arrived. (*Id.* 123:1–4.) Peralta claims that, as a result of Collin's actions, he sustained cervical spinal cord injuries that caused

paralysis from the neck down and required two surgeries. (Doc. 20 ¶ 23.) There is no dispute that Peralta suffered these injuries.

Peralta submits the affidavit of expert witness Charles W. Drago, a certified police instructor who was a law enforcement officer for 30 years, 18 of which he served as a commanding officer. (Doc. 6,1 Ex. A, Drago Aff. ¶¶ 2–3.) Drago avers that a reasonable officer in the situation would take precautions to ensure that an intoxicated individual was secure in an environment where he cannot fall and injure himself and a reasonable officer would regularly check on the individual. (*Id.* ¶¶ 8–9, 11.) Drago further avers that a reasonable officer would not have moved Peralta after he was injured and reported that he could not move; rather, a reasonable officer would have attempted to keep Peralta still until medical personnel arrived. (*Id.* ¶¶ 13–14.) Based on this evidence and the above facts, a reasonable jury could find that Collins breached her duty of care owed to Peralta.

Defendants argue that Peralta fails to establish the causation element because he presents no expert medical evidence to establish that his injuries were caused by Collins' actions after he fell in the holding cell. (Doc. 62 at 4.) Defendants submit that Peralta has not satisfied his burden to show what caused his injuries—his fall or Collins' later actions. (*Id.*) But the parties dispute whether Peralta could feel his limbs after he fell and before Collins first pulled him and lifted up his arms. (*See* Doc. 61, Ex. C, Collins Dep. 105:17–21; Doc. 60 at 11–12.) Moreover, Defendants' argument ignores that part of Peralta's claim alleging that Collins breached her duty when she kept Peralta handcuffed while he was in the holding cell and failed to check on him despite his condition and that this breach created unsafe and dangerous conditions that contributed to his fall.

Peralta "does not need 'to introduce evidence to establish that the negligence resulted in the injury or the death, but simply that the negligence increased the risk of injury or death.'" *Ritchie v. Krasner*, 211 P.3d 1272, 1281–82 (Ariz. Ct. App. 2009) (quoting *Thompson v. Sun City Comm. Hosp., Inc.*, 688 P.2d 605, 615 (1984)). A "plaintiff need only present probable facts from which the causal relationship reasonably may be inferred." *Robertson v. Sixpence Inns of Am., Inc.*, 789 P.2d 1040, 1047 (1990); *see Ritchie*, 211 P.3d

at 1282 (a plaintiff must present enough evidence for a jury reasonably to infer that the defendant's negligent conduct was a proximate cause of the injury); *see also Gallick v. Baltimore & O.R. Co.*, 372 U.S. 108, 116 (1963) (as to causation, there simply needs to be enough evidence to justify a jury's finding that the negligence "played any role in producing the harm" or injury). Defendants' reliance on *Benkendorf v. Advanced Cardiac Specialists Chartered* to support that expert medical testimony is required is misplaced. (Doc. 62 at 4, citing 269 P.3d 704, 706 (Ariz. Ct. App. 2012).) *Benkendorf* held that "a plaintiff in a *medical malpractice lawsuit* must prove the causal connection between an act or omission and the ultimate injury through expert medical testimony, unless the connection is readily apparent to the trier of fact." 269 P.3d at 706 (emphasis added). This is not a malpractice or medical negligence lawsuit. "No expert testimony is needed to prove proximate causation in a general negligence case." *Parknavy v. White*, No. 1 CA-CV 12-0542, 2013 WL 3148652, at *3 (Ariz. Ct. App. June 18, 2013). Moreover, as stated, causation is generally a question of fact for the jury. *Petolicchio v. Santa Cruz. Cnty. Fair and Rodeo Ass'n, Inc.*, 866 P.2d 1342, 1348 (1994). Viewing the facts in Peralta's favor, a reasonable jury could find that Collins' negligent conduct was a proximate cause of his injuries.

In light of the above, there exist genuine issues of material fact as to whether Collins breached her duty of care to Peralta, whether there is a causal connection between that breach and the resulting injury, and whether Peralta suffered actual damages such that Collins can be found liable for negligence.

In addition, viewing the evidence in Peralta's favor, there is a genuine issue of material fact as to whether Collins was grossly negligent. Collins knew Peralta was drunk and unsteady on his feet, and she knew that alcohol was a central nervous system depressant and puts people into a "slowed state." (Doc. 61, Ex. C, Collins Dep.75:7-20.) The police expert opined that it was unreasonable to handcuff Peralta and place him alone in a holding cell without taking precautions to ensure he is secure and not able to injure himself and that it was unreasonable not to supervise him or check on him given his intoxicated state. (*Id.*,

Ex. A, Drago Aff. ¶¶ 9–11.)  Collins also knew that, after Peralta fell, he was injured, and she knew that if someone suffers an injury and cannot move their hands or feet, it is probably a neck or back injury to the spine.  (*Id.*, Ex. C, Collins Dep. 113:10–19.)  The expert opined that Collins' actions in rolling Peralta over and pulling him out of the cell were unreasonable, constituted excessive force, and exposed him to serious injury.  (*Id.*, Ex. A, Drago Aff. ¶¶ 14, 17.)  Based on this evidence, a reasonable jury could conclude that Collins' conduct constituted more than mere inadvertence or inattention and that it amounted to gross negligence.  *See Weatherford*, 81 P.3d at 326 n.4; *Walls*, 826 P.2d at 1221 (to go to the jury, "gross negligence need not be established conclusively, but the evidence on the issue must be more than slight and may not border on conjecture").

### b.    Milstead

Defendants argue that Peralta did not allege facts pertaining to actions or omissions by Milstead, nor did Peralta allege facts or develop evidence to support a state law claim of negligence hiring, training, or supervision.  (Doc. 57 at 8.)

In the First Amended Complaint, Peralta did not set forth any allegations of specific conduct engaged in by Milstead and, specifically, did not allege that Milstead personally breached a duty owed to Peralta.  *See Gipson*, 150 P.3d at 230 (a plaintiff must show a breach by the defendant).  As such, Peralta failed to state a negligence claim against Milstead.  Nor did Peralta state a claim against Milstead under the doctrine of respondeat superior.  Peralta made one allegation of respondeat superior liability; however, this allegation was against the State.  (Doc. 20 ¶ 10.)  Regardless, to the extent Peralta may have intended to assert a claim against Milstead for vicarious liability, such a claim operates as a claim against a defendant in his official capacity because the real party in interest would be the State.  *See Strickler v. Arpaio*, No. CV-12-344-PHX-GMS, 2012 WL 3596514, at *5 (D. Ariz. Aug. 21, 2012) (recognizing the plaintiff's vicarious liability claim against the defendant sheriff in his official capacity).  As discussed, any official capacity claim against Milstead is not cognizable.

Arizona law allows a plaintiff to allege direct liability claims separate from claims of vicarious liability. *Contreras v. Brown*, No. CV-17-08217-PCT-JAT, 2019 WL 1980837, at *3 (D. Ariz. May 3, 2019); *Kassman v. Busfield Enterprises, Inc.*, 639 P.2d 353 (Ariz. Ct. App. 1981) (recognizing negligent hiring, training, and supervision as a separate cause of action against an employer). However, the allegations in Count One do not support a claim against Milstead for negligent supervision. *See Vasquez v. City of Phoenix*, Nos. CV-04-481-PHX-DGC, CV-05-608-PHX-DGC, 2006 WL 1147716, at *4 (D. Ariz. 2006) ("[t]o prove negligent supervision and retention, Plaintiff must show that the [defendant] knew or should have known that [the officers] were not competent police officers and that the [defendant's] retention of and failure to supervise the officers caused injury to Plaintiff"); *Humana Hosp. Desert Valley v. Superior Court of Ariz. In & For Maricopa Cnty.*, 742 P.2d 1382, 1386 (Ariz. Ct. App. 1987) ("[t]o prove a negligent supervision theory, a plaintiff must establish that the hospital knew or should have known that a physician was not competent to provide certain care and that the hospital's failure to supervise the physician caused injury to the plaintiff"). Peralta did not allege that Milstead knew or should have known that Collins was not competent to undertake the task to take individuals into custody. (*See* Doc. 20 ¶¶ 25–29.) Although Peralta alleges that his injuries were "caused by the careless, negligent, and unlawful acts and/or omissions of Defendants . . . ," this is too vague to support an inference that Milstead had knowledge of Collins' incompetence. (*Id.* ¶ 29.) Peralta's allegations also fail to support a claim for negligent training. *See Guerra v. State*, 323 P.3d 765, 772 (Ariz. Ct. App. 2014) (for a negligent training claim, "a plaintiff must show a defendant's training or lack thereof was negligent and that such negligent training was the proximate cause of a plaintiff's injuries"). Peralta alleged that Defendants knew unconstitutional training existed as related to interactions between officers and detainees and that Defendants failed to implement appropriate training to ensure that injuries like those suffered by Peralta did not occur; however, these allegations are set forth in Count Three, which alleges a § 1983 violation. (Doc. 20 ¶ 52.) In his Response to Defendants' Motion, Peralta did not provide any further allegations or

argument to support a negligent training claim against Milstead. *See Celotex*, 477 U.S. at 324 (the nonmovant must "go beyond the pleadings" and "designate specific facts" showing a triable issue).

In sum, Peralta has failed to show that there exists a triable issue of fact as to whether Milstead acted negligently, and the claims against Milstead in Count One will be dismissed.

### 3. Qualified Immunity

As to the remaining negligence/gross negligence claims, Collins asserts that she is entitled to qualified immunity under Arizona Revised Statute § 12-820.02. (Doc. 57 at 11.) The statute provides in relevant part that

> A. Unless a public employee acting within the scope of the public employee's employment intended to cause injury or was grossly negligent, neither a public entity nor a public employee is liable for:

> 11. An injury caused by a peace officer if the injury was caused by any act or omission while rendering emergency care at the scene of an emergency occurrence.

The Court has already determined that there is a material factual dispute as to whether Collins was grossly negligent, in which case, section 12-820.02 would not apply. Moreover, there are no facts to support that Collins' actions were committed while rendering emergency care; thus, the statute does not apply. Collins is therefore not entitled to qualified immunity under the statute.

### B. Count Two—Section 1983 Claims

In Count Two, Peralta asserts claims under § 1983 against Collins and Milstead. (Doc. 20 ¶¶ 30–47.) He asserts that Defendants violated his Fourth Amendment right against excessive force and his Fourteenth Amendment right against deliberately indifferent medical care. (*Id.* ¶¶ 31, 36.) Defendants argue that Peralta fails to establish that Collins acted with deliberate indifference and that Peralta fails to allege facts to support a § 1983 claim against Milstead. (Doc. 57 at 6, 9.)

…

…

### 1. Governing Standard

Because Peralta was a pretrial detainee at the relevant time, his claims arise under the Fourteenth Amendment's Due Process Clause. *See Kingsley v. Hendrickson*, ___ U.S. ____, 135 S. Ct. 2466, 2473 (2015); *Gordon v. Cnty. of Orange*, 888 F.3d 1118, 1124–25 (9th Cir. 2018); *Castro v. Cnty. of L.A.*, 833 F.3d 1060, 1067–68 (9th Cir. 2016). The facts giving rise to Peralta's claim are not typical of an excessive force claim because Collins was not using force to apprehend or subdue Peralta. Nonetheless, whether his claim is viewed as one alleging excessive force, failure to protect, or failure to provide adequate medical care, the standard is the same, and it is a purely objective standard. *See Kingsley*, 135 S. Ct. at 2473–74; *Gordon*, 888 F.3d at 1124–25; *Horton by Horton v. City of Santa Maria*, 915 F.3d 592, 600, 602 (9th Cir. 2019). Under the Fourteenth Amendment, a pretrial detainee must show:

> (1) The defendant made an intentional decision with respect to the conditions under which the plaintiff was confined;
>
> (2) Those conditions put the plaintiff at substantial risk of suffering serious harm;
>
> (3) The defendant did not take reasonable available measures to abate the risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and
>
> (4) By not taking such measures, the defendant caused the plaintiff's injuries.

*Castro*, 833 F.3d at 1071. "With respect to the third element, the defendant's conduct must be objectively unreasonable, a test that will necessarily 'turn[] on the facts and circumstances of each particular case.'" *Id.*

### 2. Analysis

#### a. Collins

In arguing that Collins was not deliberately indifferent, Defendants apply the incorrect standard to Peralta's claim. (Doc. 57 at 9.) Defendants contend that Peralta cannot establish that Collins acted with a sufficiently culpable state of mind as required

under the Eighth Amendment. (*Id.* at 9–10, citing *Farmer v. Brennen*, 511 U.S. 825, 834 (1994).) The Eighth Amendment applies to convicted prisoners, and deliberate indifference in that context includes a subjective component that requires a plaintiff to show that the defendant knew of and disregarded an excessive risk to a prisoner' s health or safety. *Farmer*, 511 U.S. at 837. As stated, under the Fourteenth Amendment, claims involving pretrial detainees are analyzed under a purely objective standard, and "[t]here is no separate inquiry into an officer's subjective state of mind." *Horton*, 915 F.3d at 602. In applying the wrong standard, Defendants fail to show the absence of a genuine issue of material fact that warrants judgment as a matter of law as to the Fourteenth Amendment claim against Collins.

Alternatively, when analyzing Peralta's claim against Collins under the Fourteenth Amendment standard, summary judgement is not warranted. The first element is met, as there can be no dispute that Collins made intentional decisions regarding Peralta's conditions of confinement. Specifically, she decided to keep him handcuffed in the cell and not check on him, and, after he fell, she decided to open the cell door, turn him over, and drag him down the hallway before calling for medical assistance. *See Castro*, 833 F.3d at 1070 (noting that this first element would not be satisfied only if the defendant's conduct resulted from something totally unintentional, such as an accident).

The second element considers whether Peralta faced a substantial risk of suffering serious harm. The facts indicate that Peralta was intoxicated and unsteady on his feet, and, after he collapsed and the cell door was opened, Peralta was face down on the floor and expressed that he could not move or feel his arms or legs. On this record, there exists a genuine issue of material fact as to whether Peralta faced a substantial risk of suffering serious harm in the circumstances.

The third element considers whether Collins took reasonable available measures to avert the risk of harm to Peralta. The facts show that Peralta was intoxicated and unsteady on his feet. (Doc. 61 ¶ 20.) As discussed, the expert opined that a reasonable officer in the situation would take precautions to ensure that an intoxicated individual was secure in an

environment where he cannot fall and injure himself and a reasonable officer would regularly check on the individual. (Doc. 60, Ex. A, Drago Aff. ¶¶ 8–9, 11.) The expert further opined that a reasonable officer would not have moved Peralta after he fell; rather, a reasonable officer would have attempted to keep Peralta still until medical personnel arrived. (*Id.* ¶¶ 13–14.) This evidence supports that there were reasonable measures available that Collins could have taken, but she did not. Thus, a reasonable jury could find that Collins did not act as a reasonable official in the circumstances, thereby making the consequences of her conduct obvious. *See Castro*, 883 F.3d at 1071.

The final element requires a showing that Collin's failure to take reasonable measures caused Peralta's injury. Collins relies on the same argument presented as to negligence—that expert medical opinion is required to establish what caused Peralta's injury. (Doc. 62 at 5.) Expert medical opinion is not mandatory to prove deliberate indifference even under the stricter Eighth Amendment standard. *See Reidhead v. Arizona*, No. CV 12-00089-PHX-JAT, 2014 WL 2861046, at *5 (D. Ariz. June 24, 2014) (expert testimony not required for deliberate indifference claim) (citing *Sanders v. York*, 446 F. App'x 40, 43 (9th Cir.2011) (deliberate indifference claim did not require expert testimony)). Further, Collins' argument ignores that part of Peralta's claim that her actions led to his fall. Peralta submits evidence supporting that her conduct—before and after his fall—was not reasonable in the circumstances. As with the negligence claim, in a constitutional-tort case, "causation is generally a question of fact for the jury." *Arellano v. Melton*, No. 15-cv-2069-JAH-MDD, 2018 WL 4579851, at *4 (S.D. Cal. Sept. 25, 2018) (quotation omitted). In light of the material factual disputes as to whether Collins placed Peralta in conditions that subjected him to a substantial risk of serious harm and then failed to take reasonable available measures to abate that risk, there exists a question of fact as to whether Collins' actions caused Peralta's injuries. *See Lemire v. Cal. Dep't of Corrs. and Rehab.*, 726 F.3d 1062, 1080–81 (9th Cir. 2013) ("plaintiffs who have already demonstrated a triable issue of fact as to whether prison officials exposed them to a

substantial risk of harm, and who actually suffered precisely the type of harm that was foreseen, will also typically be able to demonstrate a triable issue of fact as to causation").

For the above reasons, summary judgment will be denied as to the Fourteenth Amendment claim against Collins in Count Two.

### b. Milstead

"A supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them. There is no respondeat superior liability under [§]1983." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *see Iqbal*, 556 U.S. at 676 ("[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution"). A supervisor may be liable in his individual capacity under § 1983 "if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Starr v. Baca*, 652 F.3d 1202 (9th Cir 2011) (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)).

The Ninth Circuit's holding in *Starr* illustrates the requirements for a supervisor liability claim. In *Starr*, the plaintiff alleged that the sheriff knew or should have known about the dangers in the jail and was deliberately indifferent to those dangers. *Id.* at 1204–05. The allegations included that the sheriff received weekly reports from deputies responsible for reporting deaths and injuries in the jail; that the sheriff signed a memorandum that addressed continuing constitutional violations in the jail; and that the sheriff knew of a settlement agreement in a civil case where the detainee-plaintiffs had sustained severe injuries. *Id.* at 1209–12. The appellate court found that the plaintiffs sufficiently alleged a deliberate indifference supervisor liability claim against the sheriff because the complaint included detailed factual allegations that plausibly suggested the sheriff "acquiesced in the unconstitutional conduct of his subordinates, and was thereby deliberately indifferent to the danger posed to Starr." *Id.* at 1204–05, 1216.

Defendants submit that Peralta fails to set forth any allegations of specific actions taken by Milstead and, therefore, fails to show that Milstead personally participated in an alleged violation such that he can be individually liable under § 1983. (Doc. 57 at 7.) In his Response, Peralta acknowledges that the amended pleading primarily addressed Collins' actions "as she was the only state actor personally involved in the incident," but asserts that through discovery, he learned that Milstead was responsible for failing to train Collins in how to handle spine injuries, and this failure to train was the proximate cause of Peralta's injuries. (Doc. 60 at 6–7.) However, in his Response and Statement of Facts, Peralta did not set forth any specific facts as to Milstead's actions or failure to act, nor did Peralta assert any facts regarding Milstead's role in training Collins or other officers. (*See* Docs. 60–61.) *See Celotex*, 477 U.S. at 324 (the nonmovant must "go beyond the pleadings" and "designate specific facts" showing a triable issue). Consequently, Peralta fails to show any disputed material facts as to whether Milstead breached a duty to Peralta, whether Milstead created a policy that violated Peralta's constitutional rights, or whether Milstead acquiesced in unconstitutional conduct by Collins. Summary judgment will therefore be granted to Milstead as to the claim in Count Two.

## VII. Punitive Damages

Collins argues that Peralta fails to set forth factual assertions indicating the required mental state to award punitive damages under § 1983 or state law. (Doc. 57 at 12.)

Whether punitive damages are warranted is an issue reserved for the jury. *See Smith v. Wade*, 461 U.S. 30, 48, 54, 56 (1983) ("punitive damages are awarded in the jury's discretion"). A jury may assess punitive damages in a § 1983 action when the defendant's conduct "is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Id.* at 56. Here, a reasonable jury could conclude that Collins exhibited reckless or callous indifference to Peralta's rights.

To support a claim for punitive damages under state law, "there must be 'something more' than gross negligence; the 'something more' is an 'evil mind.'" *In re Estate of Fazio*,

No. 1 CA-CV 07-0520, 2009 WL 1830719, at *3 (Ariz. Ct. App. June 25, 2009) (quoting *Volz v. Coleman Co., Inc.*, 748 P.2d 1191, 1194 (1987)). But "evil mind" can be inferred from a defendant's deliberate indifference to the rights of others or conscious disregard of an "unjustifiably substantial risk of significant harm." *Id.* (quoting *Linthicum v. Nationwide Life Ins. Co.*, 723 P.2d 675, 680 (1986)). A jury may assess punitive damages if it finds that a defendant consciously disregarded a known substantial risk that her conduct might significantly injure another or that a defendant's conduct was outrageous in nature. *Bradshaw v. State Farm Mut. Auto. Ins. Co.*, 758 P.2d 1313, 1324 (1988). When viewing the facts in Peralta's favor, a reasonable jury could find that Collins consciously disregarded a known substantial risk that her actions might significantly injure Peralta.

The request to dismiss a claim for punitive damages will be denied. In accordance with the above,

**IT IS ORDERED:**

(1)     The reference to the Magistrate Judge is withdrawn as to Defendants' Motion for Summary Judgment (Doc. 57).

(2)     Defendants' Motion for Summary Judgment (Doc. 57) is **granted in part** and **denied in part** as follows:

(a)     the Motion is **granted** as to the claims against the State of Arizona; Count One, Count Five, and the claims within Count Four against the State are **dismissed without prejudice** based on Eleventh Amendment immunity;

(b)     the Motion is **granted** as to the official capacity claims against Milstead; Count Three and the claims within Count Four against Milstead are **dismissed with prejudice***;*

(c)     the Motion is **granted** as to the individual capacity claims in Count One and Count Two against Milstead, and these claims are **dismissed with prejudice**.

(d)     the Motion is otherwise **denied**.

(3)     The State of Arizona and Milstead are dismissed as Defendants.

…

(4)     The remaining claims are:

    (a)     Count One—negligence/gross negligence claims against Collins;

    (b)     Count Two—Fourteenth Amendment claim against Collins.

(5)     Pursuant to the Scheduling Order (Doc. 17), Plaintiff shall file and serve a Notice of Readiness for a Final Pretrial Conference within ten (10) days of this Order.

Dated this 8th day of July, 2019.

Honorable Diane J. Humetewa
United States District Judge